**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EICHER MOTORS LIMITED, )<br><br>Plaintiff, )<br><br>v. )<br><br>)<br>THE INDIVIDUALS, CORPORATIONS, LIMITED )<br>LIABILITY COMPANIES, PARTNERSHIPS AND )<br>UNINCORPORATED ASSOCIATIONS IDENTIFIED )<br>ON SCHEDULE "A", )<br><br>Defendants. ) | Case No.  24-cv-826<br><br> Judge |

**COMPLAINT**

Plaintiff EICHER MOTORS LIMITED ("EICHER MOTORS" or "Plaintiff"), through

undersigned counsel, hereby complains of the Partnerships, Unincorporated Associations and

others identified in Schedule A attached hereto (collectively, "Defendants"), and for its

Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b)

and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under

the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are

so related to the federal claims that they form part of the same case or controversy and derive

from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may

properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets consumers in the United States, including Illinois, through at least the fully interactive

commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademarks. Each of the Defendants has targeted sales to Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accepts payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3.     This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's ROYAL ENFIELD trademarks, which are covered by U.S. Trademark Registration Nos. 2,276,775; 2,934,227; 4,083,473; 4,556,484; 5,677,518; 5,677,519; 5,842,536; 5,842,537; 5,912,777; 6,274,398; 6,304,126; 6,458,497; and 6,513,694 (the "ROYAL ENFIELD Trademarks"). The Registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the marks are attached as Exhibit 1.

4.     The Defendants create numerous Defendant Internet Stores and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between

them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing unauthorized ROYAL ENFIELD products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

5.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFF

6.      Plaintiff EICHER MOTORS LIMITED is an Indian limited liability company with places of business at 3rd Floor – Select City Walk, A-3 District Centre, Saket, New Delhi, India 110017 and Bruntingthorpe Proving Ground, Bruntingthorpe, Lutterworth, LE17 5QS United Kingdom.

7.      Plaintiff is the owner of the ROYAL ENFIELD Trademarks (U.S. Registration Nos. 2,276,775; 2,934,227; 4,083,473; 4,556,484; 5,677,518; 5,677,519; 5,842,536; 5,842,537; 5,912,777; 6,274,398; 6,304,126; 6,458,497; and 6,513,694 for the ROYAL ENFIELD marks). Plaintiff is the owner in the U.S. of all intellectual property relating to ROYAL ENFIELD products. EICHER MOTORS LIMITED under its brand, ROYAL ENFIELD, is in the business

3

of developing, making, marketing, selling, and distributing ROYAL ENFIELD products.

ROYAL ENFIELD is the oldest global motorcycle brand in continuous production, with its

Bullet model being the longest motorcycle production run of all time. ROYAL ENFIELD makes

and sells classic-looking motorcycles under the Royal Enfield Bullet, Classic 350, Meteor 350,

Classic 500, Interceptor 650, and Continental names/marks in more than 50 countries. ROYAL

ENFIELD's first company-owned dealership in the U.S. was established in Milwaukee,

Wisconsin in 2015. Plaintiff is the official source of ROYAL ENFIELD products:

https://www.royalenfield.com/



8.      The ROYAL ENFIELD Trademarks are and have been the subject of substantial

and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely

market and promote the ROYAL ENFIELD Trademarks in the industry and to consumers.

Plaintiff's promotional efforts include — by way of example, but not limitation — website and

social media sites, and point of sale materials.

9.      The ROYAL ENFIELD Trademarks are distinctive and identify the merchandise

as goods from Plaintiff. The registrations for the ROYAL ENFIELD Trademarks constitute

prima facie evidence of the validity thereof and of Plaintiff's exclusive right to use the ROYAL ENFIELD Trademarks pursuant to 15 U.S.C. § 1057(b).

10.     The ROYAL ENFIELD Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1) and have been continuously used and never abandoned.

11.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the ROYAL ENFIELD Trademarks. As a result, products bearing the ROYAL ENFIELD Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

12.     Defendants are individuals and business entities who, upon information and belief, primarily reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit ROYAL ENFIELD products to consumers within the United States, including Illinois and in this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

13.     The success of the ROYAL ENFIELD brand has resulted in its counterfeiting. Plaintiff has identified numerous online marketplace accounts and marketplace listings on platforms such as iOffer, PayPal, Wish and Amazon, including the Defendant Internet Stores, which were offering for sale, selling, and importing counterfeit ROYAL ENFIELD products to consumers in this Judicial District and throughout the United States. Defendants have persisted

in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2017 was over $1.21 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost U.S. jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

14. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine ROYAL ENFIELD products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, PayPal, Wish and Amazon. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal, Wish and Amazon logos.

15. Plaintiff has not licensed or authorized Defendants to use the ROYAL ENFIELD Trademarks, and none of the Defendants are authorized retailers of genuine ROYAL ENFIELD products.

16. Upon information and belief, Defendants also deceive unknowing consumers by using the ROYAL ENFIELD Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for

websites relevant to consumer searches for ROYAL ENFIELD products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Store listings show up at or near the top of relevant search results and misdirect consumers searching for genuine ROYAL ENFIELD products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down. As such, Plaintiff also seeks to disable Defendant Internet Stores that are the means by which the Defendants could continue to sell counterfeit ROYAL ENFIELD products.

17. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the online marketplace accounts are incomplete, contain randomly typed letters, or fail to include cities or states. Other online marketplace accounts use privacy services that conceal the owner's identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, some of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective online marketplace accounts. In addition, the counterfeit ROYAL ENFIELD products for sale in

the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit ROYAL ENFIELD products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same online marketplace account patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

19.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

20.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts PayPal, Wish and Amazon accounts, for example, behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. Upon

information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal, Wish and Amazon accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal, Wish and Amazon transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal, Wish and Amazon accounts to primarily China-based bank accounts outside the jurisdiction of this Court.

21.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the ROYAL ENFIELD Trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit ROYAL ENFIELD products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit ROYAL ENFIELD products into the United States, including Illinois.

22.     Defendants' use of the ROYAL ENFIELD Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit ROYAL ENFIELD products, including the sale of counterfeit ROYAL ENFIELD products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

23.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-22 of this Complaint.

24. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered ROYAL ENFIELD Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. ROYAL ENFIELD Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the ROYAL ENFIELD Trademarks.

25. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the ROYAL ENFIELD Trademarks without Plaintiff's permission.

26. Plaintiff EICHER MOTORS LIMITED is the registered owner of the ROYAL ENFIELD Trademarks (U.S. Registration Nos. 2,276,775; 2,934,227; 4,083,473; 4,556,484; 5,677,518; 5,677,519; 5,842,536; 5,842,537; 5,912,777; 6,274,398; 6,304,126; 6,458,497; and 6,513,694).

27. The United States Registrations for the ROYAL ENFIELD Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the ROYAL ENFIELD Trademarks and are willfully infringing and intentionally selling counterfeit products using the ROYAL ENFIELD Trademarks. Defendants' willful, intentional, and unauthorized use of the ROYAL ENFIELD Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

28. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

29.     The injuries and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit ROYAL ENFIELD products.

30.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known ROYAL ENFIELD Trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

31.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-30 of this Complaint.

32.     Defendants' promotion, marketing, offering for sale, and sale of counterfeit ROYAL ENFIELD products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit ROYAL ENFIELD products by Plaintiff.

33.     By using the ROYAL ENFIELD Trademarks in connection with the sale of counterfeit ROYAL ENFIELD products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit ROYAL ENFIELD products.

34.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit ROYAL ENFIELD products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

35.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)

36.     Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-35 of this Complaint.

37.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit ROYAL ENFIELD products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine ROYAL ENFIELD products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

38.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

39.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the ROYAL ENFIELD Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any products that are not genuine ROYAL ENFIELD products or are not authorized by Plaintiff to be sold in connection with the ROYAL ENFIELD Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any products as genuine ROYAL ENFIELD products or any other products produced by Plaintiff that are not Plaintiff's or are not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the ROYAL ENFIELD Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit ROYAL ENFIELD products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

    d. further infringing the ROYAL ENFIELD Trademarks and damaging Plaintiff's goodwill;

    e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered

for sale, and which bear any trademarks of Plaintiff, including the ROYAL ENFIELD Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

f.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit ROYAL ENFIELD products; and

g.  operating and/or hosting websites registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the ROYAL ENFIELD Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not genuine ROYAL ENFIELD products or is not authorized by Plaintiff to be sold in connection with the ROYAL ENFIELD Trademark.

2)  Entry of an Order that the same online marketplace platforms shall disable the Defendant Internet Stores and make them inactive and untransferable;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer, PayPal, Wish and Amazon, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Internet Stores and online marketplace accounts, shall:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit ROYAL ENFIELD products using the ROYAL ENFIELD Trademarks, including any accounts associated with the Defendants listed in Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit ROYAL ENFIELD products using the ROYAL ENFIELD Trademarks; and

c. take all steps necessary to prevent links to the Defendant Internet Stores identified in Schedule A from displaying search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the ROYAL ENFIELD Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the ROYAL ENFIELD Trademarks;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Respectfully submitted,

Dated: January 31, 2024

By:    s/Michael A. Hierl           
Michael A. Hierl (Bar No. 3128021)
William B. Kalbac (Bar No. 6301771)
Robert P. McMurray (Bar No. 6324332)
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
(312) 580-1994 Facsimile
mhierl@hsplegal.com

Attorneys for Plaintiff
EICHER MOTORS LIMITED

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing

Complaint was filed electronically with the Clerk of the Court and served on all counsel of

record and interested parties via the CM/ECF system on January 31, 2024.


      s/Michael A. Hierl